10 P.3d 876

2000-NMCA-084

**STATE of New Mexico ex rel. TUCUMCARI POLICE DEPARTMENT, Plaintiff–Appellee,**

v.

**ONE HUNDRED FOUR THOUSAND NINE HUNDRED NINETY–NINE DOLLARS AND NO/100 ($104,999.00) IN U.S. CURRENCY IN THE POSSESSION of Vera Rebecca WALTON and Charles B. Jones and Claimed by Darrell Strickland, and all Unknown Claimants of Interest in the Premises Adverse To Plaintiff, Defendants–Appellants.**

No. 20,605.

Court of Appeals of New Mexico.

July 20, 2000.

Certiorari Denied, No. 26,493, Sept. 13, 2000.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Ass't Attorney General, Santa Fe, NM, for Appellee.

Dean E. Border, Border Law Office, P.A. Tucumcari, NM, for Appellants.

## OPINION

PICKARD, Chief Judge.

{1} Darryl Strickland (Defendant) appeals from the trial court's judgment and order determining that money seized from his vehicle during a routine traffic stop is subject to forfeiture under the New Mexico Controlled Substances Act (the Act). *See*

NMSA 1978, §§ 30–31–1 through –42 (1972, as amended through 1997). On appeal, Defendant asks us to reverse the trial court's judgment on the ground that the Tucumcari Police Department (the Department) failed to present any evidence that he obtained the seized money in connection with committing a criminal offense covered under and prohibited by the Act. We agree with Defendant and reverse the trial court's judgment.

## BACKGROUND

{2} Defendant's stepdaughter and a male companion were traveling in Defendant's vehicle in Tucumcari, New Mexico, when they were stopped by a Department police officer for exceeding the speed limit and for opening the door on the driver's side of the vehicle while the vehicle was in motion. The police officer asked the occupants where they were traveling from, where they were traveling to, and why they were traveling in the first place. Both occupants stated that they were traveling to their home state of Texas after visiting the stepdaughter's sick uncle. However, they gave conflicting responses as to the state from which they were returning. The stepdaughter claimed they were returning from Kansas City, Kansas, while her male companion claimed they were returning from St. Louis, Missouri.

{3} The police officer became suspicious after eliciting this and a few other conflicting statements from the stepdaughter and her driving companion. In light of his suspicions, the police officer asked the stepdaughter for consent to search Defendant's vehicle for weapons, drugs, and large amounts of cash. She honored the police officer's request and signed a form giving him consent to search the vehicle.

{4} The police officer did not find any weapons or drugs in the vehicle. However, in the course of his search, the police officer discovered a backpack in the vehicle's trunk, which his dog alerted on. He located and then removed from the backpack two shoe boxes, which contained several duct-taped bundles of currency. Both occupants denied knowledge and reputed ownership of the currency, which amounted to $104,999.00. After police questioning, the stepdaughter stated that the money belonged to her stepfather.

According to the stepdaughter, she and her driving companion had met a man at a motel in Kansas the previous night, and he had placed the backpack in the vehicle for her stepfather.

{5} When the police officer contacted Defendant about this incident, Defendant initially denied knowing anything about the backpack or the money contained in the backpack. A few minutes later, Defendant changed his posture and admitted to the police officer that the money belonged to him. Defendant stated that although he did not know exactly how much money was in the backpack, the money was proceeds from a legitimate boot supply business he owned and operated in Texas. The police officer decided at that point to hold the money pending proof of ownership.

{6} The Department subsequently assigned two police officers to investigate whether Defendant's purported business actually existed and whether the seized money was generated by sales contracts entered into and performed by that business. The police investigators visited the address Defendant had listed as his business address. Instead of finding a business, they found a residence with no indications of a business. The police investigators also reviewed receipts Defendant offered to substantiate his claim that the seized money was proceeds from sales. They found several spelling errors and other discrepancies that made them question the validity of the proffered receipts. The police investigators ultimately concluded that the seized money was not generated by Defendant's business. The officers also sent the backpack and bundles of money to the crime lab, but no drugs were found.

{7} The Department, based on the foregoing, filed a civil forfeiture action against Defendant. The Department claimed it was entitled to the seized money because it was the fruit or instrumentality of a drug-related crime Defendant had committed in violation of the Act. No criminal charges were filed against anyone. After conducting a trial on the matter, the trial court agreed with the Department and entered a judgment in its favor. Defendant now appeals.

## DISCUSSION

{8} The trial court forfeited Defendant's money in favor of the Department on the ground that the Department "made a prima facie showing that the currency seized herein was the fruit and/or instrumentality of a drug transaction." Defendant contends that the trial court erred because the Department failed to present any evidence that he committed a criminal offense covered under the Act. We agree with Defendant that the Department had to prove he committed a violation of the Act before his money could be forfeited, and that the Department failed to meet its burden of proof in this case.

{9} The property subject to forfeiture under the Act is listed in Section 30–31–34. This section specifically provides that the following property may be forfeited:

A. all controlled substances and all controlled substance analogs which have been manufactured, distributed, dispensed or acquired in violation of the Controlled Substances Act;

B. all raw materials, products and equipment of any kind including firearms which are used or intended for use in manufacturing, compounding, processing, delivering, importing or exporting any controlled substance or controlled substance analog in violation of the Controlled Substances Act;

C. all property which is used or intended for use as a container for property described in Subsection A or B of this section;

D. all conveyances, including aircraft, vehicles or vessels, which are used or intended for use to transport or in any manner to facilitate the transportation for the purpose of sale of property described in Subsection A or B of this section;

E. all books, records and research products and materials, including formulas, microfilm, tapes and data, which are used or intended for use in violation of the Controlled Substances Act;

F. narcotics paraphernalia or money which is a fruit or instrumentality of the crime[.]

Section 30–31–34.

{10} Based on the facts presented in this case, the only provision that might potentially have allowed the trial court to forfeit Defendant's money in favor of the Department is Section 30–31–34(F). The "crime" set forth in Section 30–31–34(F) refers to a crime that is covered under the Act. *See State v. Nunez*, 2000–NMSC–013, ¶ 57, 129 N.M. 63, 2 P.3d 264 ("All the forfeitures of property under Section 30–31–34 are expressly predicated on the fact that the defendant was 'in violation of the Controlled Substances Act.'"); *In re Forfeiture of Fourteen Thousand Six Hundred Thirty Nine Dollars ($14,639)*, 120 N.M. 408, 412–13, 902 P.2d 563, 567–68 (Ct.App.1995) (concluding that the legislature has tied forfeiture directly to the commission of drug offenses under the Act). Thus, unless Defendant or his agents committed a crime in violation of the Act, his property was not subject to forfeiture under the Act.

{11} In the case at bar, the Department failed to produce any evidence that Defendant, his stepdaughter, or her driving companion committed a crime in violation of the Act. Instead, the only evidence the Department presented was that a police officer discovered a substantial amount of currency in Defendant's vehicle and that the currency did not appear to be proceeds generated by a legitimate business enterprise. The Department cites nothing in the Act criminalizing the possession of currency that may have been acquired through a drug transaction that appears to have been consummated in another state, and there was no evidence presented of any violation of laws committed in this state. Indeed, our legislature would probably lack the authority to criminalize a drug transaction committed in another state or permit others to obtain the proceeds derived therefrom without establishing more of a nexus with this state. *See State v. Sung*, 2000–NMCA–031, ¶ 10, 128 N.M. 786, 999 P.2d 430 ("[O]ur legislature has consistently imposed a territorial limitation on the crime ... likely out of concern that it not exceed the scope of the state's authority to prosecute acts taking place outside its geographical limits."); *State v. Losolla*, 84 N.M. 151, 152, 500 P.2d 436, 437 (Ct.App.1972) ("[T]he

law is that a crime must be prosecuted in the jurisdiction where it was committed.").

{12} In light of the foregoing, we hold that the Department's failure to produce any evidence that Defendant obtained the seized money in connection with committing a criminal offense covered under or prohibited by the Act undermines the trial court's judgment. *See State v. Ozarek*, 91 N.M. 275, 276, 573 P.2d 209, 210 (1978) (ruling that the object of forfeiture under the Act is to penalize the defendant for the commission of an offense against the law); *In re Forfeiture of Fourteen Thousand Six Hundred ThirtyNine Dollars ($14,639)*, 120 N.M. at 412–13, 902 P.2d at 567–68 (concluding that the legislature intended to and did in fact tie forfeiture directly to the commission of drug offenses under the Act). Accordingly, we reverse the trial court's decision forfeiting Defendant's money in favor of the Department.

**CONCLUSION**

{13} For the reasons stated above, we reverse.

{14} **IT IS SO ORDERED.**

BOSSON and KENNEDY, JJ., concur.